MaddeN, Judge,
dissenting:
The facts in the case of the plaintiff Haislip, which are typical of those in all these cases, will be used in this discussion.
Haislip joined the Navy in 1907 as a midshipman, was commissioned in 1912 and served continuously until 1925, in which year he was retired, in the grade of lieutenant commander, for physical disability incurred in line of duty. He was recalled to active duty in 1941; was advanced, in 1942, to the grade of captain on the retired list, and served continuously until February 10, 1946, when he was again retired. At the time of his second retirement, he was receiving the active duty pay and allowances of a captain with over thirty years’ service.
From the date of his retirement in 1946 until October 31, 1958, a period of more than twelve years, he was paid retired pay at a rate substantially lower than the rate to which he was entitled. That was because the fiscal authorities erroneously failed to give the plaintiff and other officers similarly situated the benefit of section 15, paragraph 4, of the Pay Readjustment Act of 1942, 56 Stat. 359, 368. That paragraph provided that an officer who had served before *345 November 12,1918, “hereafter retired” should receive retired pay at the rate of 75 percent of his active duty pay at the time of retirement.
A Major Gordon of the Marine Corps had been retired in 1939 and had been recalled to active service in 1942, and had gone back to retired status in 1943. The fiscal authorities had treated him as not having “retired” in 1943, but in 1939, and therefore not “hereafter retired” as required by the 1942 statute. Gordon sued in this court for the difference between the retired pay which he had received, and that which he should have received if he had been given the benefit of the 1942 Act. This court held, 134 Ct. Cl. 840 (1956), that Gordon’s “re-retirement” in 1943 was a retirement, within the meaning of the 1942 Act, and that he was entitled to recover. Other cases presenting the same problem were similarly decided, the last one being Field v. United States, 141 Ct. Cl. 312, decided January 15, 1958. The Supreme Court of the United States on June 23, 1958, denied the Government’s petition for certiorari in Field. 357 U.S. 926.
The error of law having been corrected, the Navy with the approval of the Comptroller General, paid the plaintiff Haislip, and other officers whose situation was similar to Gordon’s, a part of the deficit owing to them. In the case of Haislip, he was paid the deficit which had accrued in his retired pay between May 28,1948 and October 31,1958. For the period since October 31, 1958, Haislip’s retired pay has been correctly computed and paid. But he has not been paid the correct amount of retired pay for the period between the date of his retirement, February 10, 1946, and May 28, 1948.
Since the plaintiff’s status and entitlement were exactly the same for the period February 10, 1946 to May 28, 1948 as they were for the period May 28,1948 to October 31,1958, and since the plaintiff was paid for the latter period, an explanation of the reason for refusal to pay for the earlier period is in order.
The explanation is that the 1946-1948 period was more than ten years prior to the time, in 1958, when the plaintiff’s claim was presented to the Comptroller General. The Act of October 9,1940, 54 Stat. 1061, 31 U.S.C. § 71(a) provides *346 that a claim against the United States cognizable by the General Accounting Office shall be forever barred unless it is presented to that office within ten years from the date on which the claim first accrued. The Comptroller General, then, in directing the Navy to pay the plaintiff for the ten year 1948-1958 period, did for the plaintiff all that he was authorized to do.
On April 24,1959, the plaintiff applied to the Board for Correction of Naval Records for correction of his record to show his entitlement to his correct amount of retired pay for the 1946-1948 period. The statute authorizing the creation of that Board says, 65 Stat. 655, 10 U.S.C. § 1552:
no corrective action shall be taken under this subsection unless the request therefor be filed * * * within three years after * * * discovery of the alleged error or injustice or within ten years after the date of the enactment of this Act, whichever be later.
The date of the Act was October 25, 1951. The plaintiff’s application was, therefore, timely.
On June 1, 1959, the Correction Board acted upon the applications of the plaintiff Haislip and several other officers. It said:
f. That in view of the foregoing findings, this Board further finds that Petitioners, through error, were not authorized retired pay at the rate to which each was legally entitled and failure to so authorize payment constitutes an injustice warranting corrective action.
DECISION:
It is the decision of this Board that the naval record of the following subject officers be corrected, where appropriate, to show their entitlement to adjustment of retired pay in accordance with the provisions of Section 15, paragraph 4, of the Pay Readjustment Act of 1942, for the period as specified below.
The Board recommended that the Navy pay to each of the petitioners the amount found to be due as a result of the correction. The Board’s recommendation was reviewed and approved by an Assistant Secretary of the Navy on June 17, 1959.
It would seem that the officers would then have received their money, and the incident would have closed. They were *347 not paid. The reason was that on September 11, 1959, the Assistant Comptroller General, in answer to an undated letter from the Office of the Chief of Finance of the Army, had rendered an opinion to the effect that the action of the Army Correction Board, in a situation in all respects comparable to that of Haislip and the other Navy officers, was beyond its powers. The opinion said:
The correction board’s action in this case appears to be an attempt to avoid the operation of a statute of limitations by means of a recital of facts in the existing record. Such action is without legal significance. The authority of the Secretary concerned, acting through a correction board, is limited to the correction of factual situations and the right of the member involved to receive a payment of money from the Government depends on a proper application of pertinent statutes to the facts shown in the corrected record. 34 Comp. Gen. 7,12; 38 id. 208,210. If the existing record states the actual facts and the purported correction merely recites such facts, no additional rights can accrue as a result of such action. 39 Comp. Gen. 178, 180.
On October 6, 1959 the plaintiff Haislip was advised by letter from the Navy Finance Center, as follows:
Further reference is made to your claim received 7 July 1959 for monetary benefits due by reason of correction of naval records.
The Comptroller General has ruled in his decision B-137384 of 11 September 1959 that the authority of the Secretary concerned is limited to the correction of factual situations and the right of the member involved to receive payments depends on proper application of pertinent statutes to the facts shown in the corrected record.
Since the correction of your records did not change the facts in your case but merely pointed out such facts, no additional rights can accrue as a result of such action and there is no entitlement to additional retired pay for the period 10 February 1946 through 27 May 1948.
With due respect, I think the opinion of the Assistant Comptroller General was wrong. It says in effect that the Secretaries and their Correction Boards have power to act only when there is presented to them some additional fact *348 which had been omitted from the applicant’s record, the insertion of which would create a record which would entitle him to some additional benefit. That would mean, for example, that if a soldier’s date of enlistment, reenlistment, rank, combat history and all other items material to his pay rate were correct, but because of a mistake of inadvertence or mathematics, or a mistake in the application of a law, he was not paid the amount to which the law entitled him, a Correction Board could not give him relief. He could get relief in this court, if he would go to the trouble and expense of litigation, and would act within six years. He could, at similar trouble and expense, go to the General Accounting Office, if he did it within ten years. But to his own department of the armed services, he could not go at all, if the appropriation relevant to the time in question had expired, which I suppose it would have long before the six or ten year periods of limitation had expired.
Congress in 1946 authorized the creation of the Correction Boards in order to enable the services to correct their own errors. There is not the slightest intimation in the statute or in its legislative history that Congress intended to draw some fine line between mistakes of fact and mistakes of law, or that Congress intended that a soldier or sailor who had been paid less than the law entitled him to, should have to resort to some difficult and expensive course of action to get the rest of his money, just because he was underpaid by reason of a misinterpretation of a statute, which misinterpretation had been long since corrected.
The statute itself, 10 U.S.C. §1552 makes its purpose plain:
§1552. Correction of military records: claims incident thereto.
(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. Under procedures prescribed by him, the Secretary of the Treasury may in the same manner correct any military record of the Coast Guard. Except when procured by fraud, a correction under this *349 section is final and conclusive on all officers of the United States.
This is not a grant of a narrow and grudging jurisdiction. It intended not only to do justice to servicemen but to make it unnecessary for them to bring their grievances to Congress for special legislation. It intended to give the Secretaries something approaching the wide discretion which Congress itself had to remedy injustices.
In the case of the soldier, referred to above, his pay could not be raised from the improper amount paid him by mistake of fact or law to the proper amount, without changing some figures on the payroll. It is hard to see why that is not a correction of his record. The fact that the correction is simple and easy to make, when the mistake of fact or law has been corrected, certainly does not undermine the jurisdiction of the Correction Board.
The opinion of the Assistant Comptroller General, quoted above, suggests some annoyance on the part of his office at the fact that officers like the plaintiffs are escaping the rigors of the statutes of limitations. The statute applicable to this court is six years. We have no reason to be annoyed because a claimant whose claim is eight years old and who could not get relief here can get relief from the Comptroller General. That is simply because Congress, in its wisdom, has seen fit to give that official a ten-year statute of limitations. In the same way, Congress has given the Secretaries the authority, up to October 31, 1961, to correct injustices. The fact that this court, and the Comptroller General, do not have so much leeway is irrelevant.
The Assistant Comptroller General’s opinion of September 11, 1959, quoted above, seems to have been rendered in disregard of the representations which the Comptroller General’s spokesman had made to the Committee of the House of Representatives, when the Committee was working out the text of the Act.
The testimony of Mr. John T. Bums, now Associate General Counsel of the General Accounting Office, appears on pages 319-381 of the hearings before the sub-committee of the House Committee on Armed Services on H.R. 1181, 82d Cong., 1st Sess.
*350 Mr. Hoyle. Therefore what you wish to do is to have the General Accounting Office reserve in the bill and be the final authority as to whether the actual audit is correct as to amount.
Mr. BtjRNS. That is right.
Mr. Doyle. Not to go into the merit of the correction of the record or even the creation of a record?
Mr. BtjRNS. That is right.
* * ‡ * *
Mr. Doyle. I can see some merit in having a duplicate check as to the accuracy of the computations as between the Department and the General Accounting Office, but I certainly would not want to see Congress turn over the responsibility of administration and determination and correction of records to a Department and give them jurisdiction because the Congress did not want to bother with it any more, like it did under the other Tort Claims Act, and then have another Department go in and question the correctness of the procedure, and all that sort of thing. It would be in order if the Department were merely acting as an accounting office, (p. 380)
Mr. BtjRNS. Sir, when the statute vests a discretion in the head of the Army, Navy, or Air Force to make a certain kind of determination and that obviously involves the exercise of a discretion, the Comptroller General is certainly not going to arrogate to himself the exercise of that discretion. That is the point I want to make, that where the statute vests in some officer of the Government the authority to make a determination, he should exercise it.
Mr. Doyle. May I ask you to do an unusual thing? You have given us the arguments against the bill as it stands and the arguments for permitting the General Accounting Office to do this audit. What are the arguments against permitting the General Accounting Office to do this audit? (p. 381)
Mr. BurNS. I suppose in the back of the Department’s minds there is some fear that the General Accounting Office will, under their jurisdiction to audit and make determinations of law with respect to the legality of payments, seek to encroach upon the jurisdiction of the Departments to make these corrections of records. In other words, there possibly is a fear by the Department that after they see fit to make certain corrections the General Accounting Office will look at the thing and say, “Congress never thought you would make any such correction as this. This is obviously ‘haywire’ and we just worCt fay off, in a case like that.” *351 I suppose that is what the Department had in mind, (p. 381). (Italics supplied).
In his colloquy with Bepresentative Hess, Mr. Baier of the Department of Defense expressed his fears that the Comptroller General would attempt to review the authority of the Secretary of the Navy. He was assured that this would not happen. (Hearings, supra, p. 391)
Mr. Hess. As I understand the gentleman who testified here a few moments ago, they do not propose to pass on the merits of the case. They intend to leave that to the Department. But they do want to pass on the accounting end of it. Have you objections to that?
Mr. Baiek. No, sir; not if they stick to accounting or arithmetic, but a lot of their decisions do not stick to arithmetic and they go into the legality, into the merits. They can go back and say this case was without jurisdiction. The Secretary of the Navy has appointed the Board and they determine as a quasi-judicial body what cases shall come into them and we do not want them to attack the legality of the Board’s action or the Secretary of the Navy. (Italics supplied).
Mr. Hess. I understand they do not propose to do it.
In House Keport No. 449, 82d Cong., 1st Sess., on H.B. 1181, May 15, 1951, the Committee says:
During the course of the hearings, it developed that the Comptroller General felt that the question of jurisdiction of the Boards for the Correction of Military Becords, and the legality of such award, should be within his purview, in addition to the normal responsibility to audit such payments. The committee takes the position that, the Congress having established Boards for the Correction of Military Becords within each of the service departments, the jurisdiction of such Boards as well as the authority to determine the merits of each particular case should be reserved to such Boards, to the exclusion of the Comptroller General. This will not disturb the normal auditing authority of the Comptroller General. (Italics supplied).
In the cases before us, the Comptroller General has done exactly what his representative has said he would not do, and what the Committee said he was not to have the power to do. He has refused to permit the Navy to pay concededly just debts to servicemen, and has placed his *352 refusal upon the ground that the Secretary’s Correction Board did not have jurisdiction to decide the case. He has no authority to determine the Correction Board’s jurisdiction.
The Comptroller General, by his September 11, 1959 ruling, unless corrected by this court, will require these plaintiffs and other officers similarly situated to go to Congress for relief. The maximum of annoyance to the officers, the Congress, and this court will have been achieved. The maximum frustration of the purpose of the Reorganization Act of 1946, the purpose of relieving Congress by authorizing the military services to correct their own errors, will have been achieved. And nothing whatever, of any conceivable use, will have been accomplished.
Judge Durfee has authorized me to say that he agrees with the views which I have expressed.